UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES                                  :

     - v. -                                      :

MELANIE WILLIAMS-BETHA,        :                 18 Cr. 78 (AJN)

         *Defendant.*                       :

                                                       :
------------------------------------------------------------x

**EMERGENCY MOTION FOR SENTENCE REDUCTION
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**

                                              Julia Gatto, Esq.
                                              Federal Defenders of New York
                                              52 Duane Street, 10th Floor
                                              New York, New York 10007
                                              Tel.: (212) 417-8750
                                              Counsel for Melanie Williams-
                                              Bethea

TO:   Geoffrey Berman, Esq.
        United States Attorney
        Southern District of New York
        One St. Andrew's Plaza
        New York, New York 10007
        Attn: AUSAs Thomas McKay/Alexander Rossmiller

Melanie Williams-Bethea respectfully moves this Court under 18 U.S.C. § 3582(c)(1)(A)(i) to modify her sentence to time served, and immediately release her to begin her already-imposed three-year term of supervised release with a special condition of home confinement to extend until no later than May 14, 2022. The unprecedented threat of COVID-19 could not have been foreseen at sentencing and poses extraordinary risks to Ms. Williams-Bethea's health.

Ms. Williams-Bethea, age 50, has a documented medical history that includes at least two ailments—hypertension and obesity—that put her at risk to suffer serious, if not fatal, complications were she to contract the virus. She also is detained at one of the facilities hardest hit by the spread of the disease—Danbury-FCI. In issuing a recent temporary restraining order against FCI Danbury, Judge Shea in the District of Connecticut held that the facility "is experiencing an active COVID-19 outbreak—one of the worst in the federal prison system." *Martinez-Brooks v. Easter*, 20-CV-569 (MPS) (D. Conn. May 12, 2020), ECF No. 30 at 58. Attorney General Barr, in his April 3, 2020 Directive, also acknowledged Danbury's defenselessness against the virus noting the "significant levels of infection at several of our facilities, including … FCI Danbury" and directing the BOP "to move with dispatch in using home confinement, where appropriate, to move vulnerable inmates out of these institutions." Office of the Attorney General, Memorandum for Director of Bureau of Prisons: Increasing Use of Home Confinement at Institutions Most Affected by Covid-10 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download.

1

Ms. Williams-Bethea has completed roughly 25% of her 40-month sentence. Accounting for the good-time credit she already has earned, her projected release date is May 14, 2022, but she is eligible in the ordinary course for halfway-house transfer six months before that date in mid-November 2021.

On May 7, 2020, Ms. Williams-Bethea made a direct request to the B.O.P. that it release her in light of the pandemic and her vulnerabilities. On or about May 13, Ms. Williams-Bethea was informed that her request was denied by the B.O.P. Ms. Williams-Bethea therefore now submits this emergency motion for relief.

## BACKGROUND

**Ms. Williams-Bethea's Conviction and Incarceration**

In January 2018, Melanie Williams-Bethea was charged with various offenses relating to a scheme in which she and others participated through which they defrauded the financial aid program at the university at which Ms. Williams-Bethea worked. On October 17, 2018, she pled guilty to conspiracy to commit bribery in violation of 18 U.S.C. 371. On April 9, 2019, this Court sentenced Ms. Williams-Bethea to 40 months in prison, to be followed by three years of supervised release. Ms. Williams-Bethea began serving her sentence in July of 2019. She is serving her time at FCI-Danbury.

**Ms. Williams-Bethea's Current Conditions of Confinement and Health Conditions**

    A.    *Current Conditions at FCI Danbury*

"It is undisputed that there is an active and serious outbreak of COVID-19 at FCI Danbury." *Martinez-Brooks*, ECF No. 30 at 43. The facility has proven over

the last several weeks that it was powerless to stop the pandemic from entering the prison, and that it is ill-equipped to contain its spread. On April 3, 2020, at the time of the Attorney General's directive, 20 inmates and 6 staff members at the facility had tested positive for COVID-19. As shown on the next page, after apparently peaking at 44 positive inmate cases on April 14, 2020, and dropping to 5 positive inmates on April 27, 2020 (a dubious rate of recovery), this week, FCI Danbury is reporting 34 new positive inmates, in addition to 48 "recovered" inmates,[1] without widespread testing. Together, the facility has diagnosed 82 tested-positive inmates and 60 tested-positive staff. *See* n.1. On April 18, 2020, an inmate died of COVID-19 at FCI Danbury. *Id.*



The 142 positive cases at FCI Danbury result from the testing of only a small

---

[1] *BOP: COVID-19 Update*, Federal Bureau of Prisons (Mar. 30, 2020 to May 10, 2020), *at* https://www.bop.gov/coronavirus/ (daily historical screenshots on file with Federal Defenders). On May 8, 2020, the BOP began reporting a new category of so-called "recovered" inmates. This chart of total positive cases adds those inmates to current positive cases, beginning on that date.

portion of the inmate population, causing concern that it vastly understates the true infection rate. As of May 5, 2020, of the 992 inmates at the facility, only "205 inmates [had] been tested for COVID-19; sixty-nine inmates and fifty-six staff [had] tested positive. This includes testing of every woman at the satellite prison, performed at the behest of U.S. Senator Christopher Murphy between May 2nd and 3rd, during which 20 of 143 women tested positive." *Martinez-Brooks*, ECF No. 30 at 13 (citing ECF No. 24-2 at 25). "The high rate of positive tests outside of the satellite prison, and significant questions…as to the adequacy of testing, suggest this number may underrepresent the true number of COVID-19 infections at FCI Danbury." *Id.* at 43–44.

It is unsurprising that COVID is ravaging FCI Danbury. The physical layout of the jail makes plain why the virus thrives there. By their nature, prisons are infectious disease vectors, as individuals are held in close quarters, without any ability to practice social distancing or other preventative measures. This is especially true here, where "the structure of the three facilities at FCI Danbury—even assuming that all reasonable precautions and safety measures are being fastidiously observed […]—heightens the risk of transmission." *Martinez-Brooks*, ECF No. 30 at 44.

Jaimie Meyer is an Assistant Professor of Medicine at Yale School of Medicine and Assistant Clinical Professor of Nursing at Yale School of Nursing in New Haven, Connecticut, who is board certified in Internal Medicine, Infectious Diseases and Addiction Medicine. *Brooks-Martinez*, ECF No. 1-1 at 2. She has

4

worked for over a decade on infectious diseases in jails and prisons, and from 2008–2016, served as the Infectious Disease physician for York Correctional Institution in Niantic, Connecticut. *Id.* Dr. Meyer has examined the conditions at FCI Danbury, applied her considerable expertise, and concluded that "reducing the size of the population in jails and prisons is crucial to reducing the level of risk [of contracting COVID-19] both for those within those facilities and for the community at large." *Id.* at 8. "Individuals who are already in [BOP] facilities should be evaluated for release…this is more important still for individuals with preexisting conditions…or who are over the age of 65." *Id.*

    B.    *Ms. Williams-Bethea's Pre-existing Comorbidities Render Her Particularly Vulnerable.*

Ms. Williams-Bethea is especially vulnerable to the threat of COVID-19. She is 50 years old and has several underlying health conditions that increase her vulnerability to the worst consequences of COVID-19, should she become infected in what appears to be the vector of FCI Danbury.

As noted in her BOP medical records, **Exhibit A**,[2] and her PSR, **Exhibit B**,[3] Ms. Williams-Bethea's BMI places her in the category of "morbidly obese" and she suffers from hypertension. Ms. Williams-Bethea's comorbidities place her at heightened risk for deadly consequences should she contract COVID-19. A CDC report found that among Ms. Williams-Bethea's age cohort (50–64), obesity and

---

[2] Due to Ms. Williams-Bethea's privacy interests in her medical records, we respectfully request that they be filed separately under seal. Ms. Williams-Bethea consents to the public filing of all of her health information contained in this motion.
[3] Likewise, we request that the PSR be filed under seal, as in the ordinary course.

5

hypertension were the two most prevalent comorbidities for patients hospitalized with COVID-19: obesity (observed in 49.0% of patients), hypertension (47.4%).[4]

First, Ms. Williams-Bethea has chronic hypertension which has to be treated with medication. Her condition is especially concerning in light of Ms. Williams-Bethea's family medical history: her father died of a stroke and her mother suffered a stroke in her 50s. Hypertension has "been associated with increased illness severity and adverse outcomes" from COVID–19.[5] The WHO has found that the mortality rate among those with hypertension is 8.4%, compared to 1.4% for those otherwise healthy.[6]

Second, Ms. Williams-Bethea is "morbidly obese." She is 311 pounds with a Body Mass Index of 51.3. A recent study of COVID–19 positive patients in New York City found that those under 60 years old with a BMI between 30 and 34 "were 2.0 and 1.8 times more likely to be admitted to acute and critical care, respectively,

---

[4] Garg et al., Hospitalization Rates and Characteristics of Patients Hospitalized with Laboratory-Confirmed Coronavirus Disease 2019—COVID–NET, 14 States, March 1–30, 2020, at 2, 5 tbl., CDC, Morbidity & Mortality Weekly Report (Apr. 8, 2020) ("Hospitalization Rates Report"), available at https://bit.ly/3bclL9d.

[5] CDC, Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID–19), available at https://bit.ly/3cjQyRM. See also CDC COVID–19 Response Team, Preliminary Estimates of the Prevalence of Selected Underlying Health Conditions Among Patients with Coronavirus Disease 2019—United States, February 12–March 28, 2020, at 383, CDC, Morbidity & Mortality Weekly Report (Apr. 3, 2020) ("Prevalence Report"), available at https://bit.ly/34A6RqI (concluding, "consistent with findings from China and Italy," that "patients with underlying health conditions and risk factors, including ... hypertension, ... might be at higher risk for severe disease or death from COVID–19"); World Health Org., Report of the WHO–China Joint Mission on Coronavirus Disease 2019 (COVID–19), at 12 (Feb. 24, 2020) ("WHO–China Report"), available at https://bit.ly/2ySm9eH ("Individuals at highest risk for severe disease and death include ... those with underlying conditions such as hypertension.").

[6] Id.; see also Wu et al., Characteristics and Important Lessons from the Coronavirus 2019 (COVID–19) Outbreak in China, J. Am. Med. Ass'n (Feb. 24, 2020) (finding mortality rate of 6.0% among those with hypertension, versus 2.3% overall), https://bit.ly/2VaesJN.

compared to individuals [with a BMI less than 30]. For patients in the same age-group with a BMI over 35, the risk was 2.2 and 3.6 times higher, respectively."[7]

Thus, "[o]besity appears to be a previously unrecognized risk factor for hospital admission and need for critical care," and "may contribute to increased morbidity rates."[8]

Third, although Ms. William-Bethea's age (50) does not place her in the highest-risk category, it does elevate her risk. The CDC has found that the hospitalization rate for those aged 50–64 is 1.6 times the overall rate, and three times the rate for those aged 18–49.[9]

## ARGUMENT

**Under the First Step Act, this Court has Broad Authority to Determine Whether Extraordinary and Compelling Circumstances Exist to Modify Ms. William-Bethea's Sentence and Release Her to Home Confinement.**

The First Step Act ("FSA") expressly permits Ms. Williams-Bethea to move this Court to seek compassionate release, by which this Court may reduce her term of imprisonment, and order that she serve up to the balance of the term on home confinement as a special condition of supervised release, upon an amended

---

[7] Lighter et al., Obesity in Patients Young Than 60 Years Is a Risk Factor for COVID–19 Hospital Admission, at 1, Clinical Infectious Diseases (forthcoming) (Apr. 9, 2020), *available at* https://bit.ly/3bg2dRy.

[8] *Id.* at 2. Two preprint publications reach similar conclusions. Petrilli et al., Factors Associated with Hospitalization and Critical Illness Among 4,103 Patients with COVID–19 disease in New York City, at 14 (Apr. 11, 2020) ("[T]he chronic condition with the strongest association with critical illness was obesity, with a substantially higher odds ratio than any cardiovascular or pulmonary disease."), https://bit.ly/2XzRTj1; Cai et al., Obesity and COVID–19 Severity in a Designated Hospital in Shenzhen, China (Apr. 1, 2020) ("[O]besity, especially in men, significantly increases the risk of developing severe pneumonia in COVID–19 patients."), https://bit.ly/2VapChG.

[9] Hospitalization Rates Report, at 2, 3 fig.1 (7.4 hospitalizations per 100,000 for those aged 50–49, compared to 4.6 overall and 2.5 for those aged 18–49).

7

judgment. *See* 18 U.S.C. § 3582(c)(1)(A)(i). A defendant can seek recourse through the courts after either (1) the BOP declines to file such a motion on his behalf; or (2) there has been of lapse of 30 days from the warden's receipt of the defendant's request, whichever is earlier. *Id.*

"A court may then 'reduce the term of imprisonment' after finding that 'extraordinary and compelling reasons warrant such a reduction' and 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Ebbers*, 2020 WL 91399, at *4, 02-CR-1144 (VEC) (ECF No. 384) (S.D.N.Y. Jan. 8, 2020). "In making its decision, a court must also consider 'the [sentencing] factors set forth in section 3553(a) to the extent that they are applicable.'" *Id.* (*quoting* 18 U.S.C. § 3582(c)(1)(A)).

While courts have noted that the Sentencing Commission's applicable policy statement on what constitutes "extraordinary and compelling reasons" to warrant a sentence reduction is anachronistic because it has not been updated since passage of the FSA, they still continue to be guided by the Sentencing Commission's descriptions of "extraordinary and compelling reason." *See, e.g.*, *Ebbers*, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020); *United States v. Asaro*, 17-CR-127 (ARR), 2020 WL 1899221, at *4 (E.D.N.Y. Apr. 17, 2020). However, the Sentencing Commission's statements do not constrain the court's independent assessment of whether "extraordinary and compelling" reasons warrant a sentence reduction in light of the First Step Act's amendments. *United States v. Beck*, 2019 WL 2716505, at *5–6 (M.D.N.C. June 28, 2019); *see also Ebbers*, 2020 WL 91399, at *4. Indeed,

8

"the district courts themselves have the power to determine what constitute extraordinary and compelling reasons for compassionate release." *United States v. Young*, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) (collecting cases).

### A. *Ms. Williams-Bethea Has Exhausted Her Administrative Remedies*

Ms. Williams-Bethea has exhausted her administrative remedies. On May 7, 2020, through counsel, Ms. Williams-Bethea filed a petition with the warden of FCI Danbury, seeking compassionate release due to her underlying medical issues in the wake of the COVID-19 pandemic. **Exhibit C**. On May 13, 2020, Ms. Williams-Bethea was informed that her request was denied. Her motion is thus properly before this Court.

### B. *"Extraordinary and compelling reasons" warrant a reduction in Ms. Williams-Bethea's sentence.*

The COVID-19 pandemic continues to roil the United States, the Bureau of Prisons, and FCI Danbury. The virus has infected more than 1.3 million Americans and killed 84,102, in a span of less than three months.[10] Of them, COVID-19 has infected more than 20,119 people in jails and prisons, and has killed more than 304.[11] Every day,[12] another person (or several) dies in the custody and care of the

---

[10] *Coronavirus in the U.S.: Latest Map and Case Count*, The New York Times (May 13, 2020), *at* https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html.
[11] *A State-by-State Look at Coronavirus in Prisons*, The Marshall Project (May 10, 2020), *at* https://www.themarshallproject.org/2020/05/01/a-state-by-state-look-at-coronavirus-in-prisons.
[12] *Press Releases*, Federal Bureau of Prisons (May 13, 2020), *at* https://www.bop.gov/resources/press_releases.jsp (announcing deaths in the BOP on May 13, May 12, May 11, May 10, May 9, May 8, May 7, May 6, May 5, May 4, May 3, May 2, May 1, April 30, April 29, April 28, April 27, April 26, April 25, April 24, April 22, April 19, April 18, April 17, April 16, April 15, April 14, April 13, April 12, April 10, April 4, April 3, April 2, April 1, and March 28).

Bureau of Prisons. The BOP has lost 57 inmates to the virus.[13]

Conditions of confinement create an ideal environment for the transmission of highly contagious diseases like COVID-19.[14] In jails, "[t]he probability of transmission of potentially pathogenic organisms is increased by crowding, delays in medical evaluation and treatment, rationed access to soap, water, and clean laundry, [and] insufficient infection-control expertise." *Id.* The virus is now known to be contagious even among asymptomatic carriers. Scientists have found that "symptom-based screening alone," as has been implemented at FCI Danbury, fail[s] to detect a high proportion of infectious cases and was not enough to control transmission" in a nursing home setting, which bears similarities to a jail.[15]

As shown, Ms. Williams-Bethea is particularly vulnerable to COVID-19, due to her preexisting hypertension and obesity and her age. This is an "extraordinary and compelling reason" for her release. *See* Note 1(A), § 1B1.13 (expressly recognizing that "other reasons" may exist for granting compassionate release), *see* Note 1(D), § 1B1.13 Note 1(D) (recognizing that extraordinary and compelling reasons exists "other than, or in combination with, the reasons described in subdivisions (A) through (C)."). Here, Ms. Williams-Bethea's high susceptibility to complications should she contract COVID-19 falls within the purview of this

---

[13] *COVID-19*, Federal Bureau of Prisons (May 19, 2020), *at* https://www.bop.gov/coronavirus/.
[14] *See* Joseph A. Bick (2007). *Infection Control in Jails and Prisons. Clinical Infectious Diseases* 45(8):1047-1055, *at* https://academic.oup.com/cid/article/45/8/1047/344842.
[15] Monica Gandhi, Deborah S. Yokoe, and Diane V. Havlir, *Asymptomatic Transmission, the Achilles' Heel of Current Strategies to Control Covid-19*, The New England Journal of Medicine (Apr. 24, 2020), *at* https://www.nejm.org/doi/full/10.1056/NEJMe2009758.

catchall. Moreover, courts have noted that while § 1B1.13 provides "helpful guidance" for determining what constitutes an extraordinary and compelling reason to warrant a sentence reduction, the inquiry does not end there. Rather, district courts have the freedom to shape the contours of what constitutes an extraordinary and compelling reason to warrant compassionate release. Given the highly infectious nature of COVID-19, the demonstrated failure of FCI Danbury to stop the spread, the inability of Ms. Williams-Bethea to practice any of the hygienic and social distancing techniques that the CDC has put in place to prevent rapid transmission, and the fact that she suffers from ailments that render her higher risk, this Court should find that Ms. Williams-Bethea's legitimate medical risk is a sufficiently extraordinary and compelling basis for granting compassionate release.

Numerous courts in this District, including this one, and in this Circuit have already found that the high risk to vulnerable defendants, like Ms. Williams-Bethea, of infection from COVID-19—and the likelihood that such infection will be severe—constitute (or, at a minimum, contribute to) "extraordinary and compelling reasons" under U.S.S.G. § 1B1.13's catchall provision.

More specifically, in the past several weeks, numerous courts have relied on hypertension and obesity—Ms. Williams-Bethea's co-morbidities—to grant § 3582(c)(1)(A)(i) motions. *E.g.*, *United States v. Gross*, No. 15 Cr. 769 (AJN), 2020 WL 1673244, at *1 (S.D.N.Y. Apr. 6, 2020) (explaining risk to inmate who suffered from hypertension and obesity, among other illnesses); *United States v. Sawicz*, 08 Cr. 287 (ARR), 2020 WL 1815851 (E.D.N.Y. Apr. 10, 2020) (ARR) (hypertension

11

alone in 43-year-old defendant); *United States v. Zukerman*, 16 Cr. 194 (AT), 2020 WL 1659880 (S.D.N.Y. Apr. 3, 2020) (hypertension, diabetes, obesity); *United States v. Colvin*, 2020 WL 1613943 (D. Conn. Apr. 2, 2020) (hypertension, diabetes); *United States v. Rodriguez*, 2020 WL 1627331 (E.D. Pa. Apr. 1, 2020) (hypertension, diabetes, obesity); *see also, e.g.*, *United States v. Burrill*, 2020 WL 1846788 (N.D. Cal. Apr. 10, 2020) (multiple conditions, including hypertension); *United States v. Hansen*, 2020 WL 1703672 (E.D.N.Y. Apr. 8, 2020) ( (multiple conditions, including hypertension); *United States v. Resnick*, 12 Cr. 152 (CM), 2020 WL 1651508 (S.D.N.Y. Apr. 2, 2020) (multiple conditions, including hypertension); *United States v. Muniz*, 2020 WL 1540325 (S.D. Tex. March 30, 2020) (multiple conditions, including hypertension).

And, Ms. Williams-Bethea is especially vulnerable at Danbury-FCI. She is powerless to take the preventative self-care measures directed by the CDC for her high-risk group to remain safe from COVID-19 infection. She cannot self-quarantine or partake in "social distancing" in her prison facility. Her prison unit is precisely the kind of space that has caused the alarmingly high spread rates of COVID-19. She is housed in a dorm with 46 women who are not spaced six feet apart. Because of lay outs like this, unlike in New York, the curve in prisons is not flattening.[16] Indeed in just the last week, the number of inmates within the BOP

---

[16] *See* Katie Park, Tom Meagher & Weihua Li, *Tracking the Spread of Coronavirus in Prisons*, The Marshall Project (Apr. 24, 2020), https://www.themarshallproject.org/2020/04/24/tracking-the-spread-of-coronavirus-in-prisons (noting that rate of infection has tripled in last week prior to publication of article).

12

who have tested positive has nearly doubled, from 2,659 (2,100 positive plus 559 so-called "recovered") on May 6, 2020 to 5,173 (2,820 positive plus 2,353 so-called "recovered") on May 13, 2020. Hand sanitizer, an effective disinfectant recommended by the CDC to reduce transmission rates, is contraband in the BOP because of its alcohol content.[17] Correctional health experts worry that, despite limited precautions, these facilities may become incubators for the COVID-19 disease; the evidence suggests FCI Danbury already has.[18] In sum, the acute risks that exist at FCI Danbury are especially dangerous to Ms. Williams-Bethea, and she accordingly faces a period of sustained peril that is likely to be "grave and enduring." *Fed. Defenders of N.Y. v. Fed. Bureau of Prisons*, --- F.3d ---, 2020 WL 1320886, at *12 (2d Cir. Mar. 20, 2020).

Accordingly, district courts have recently released a number of Ms. Bethea-Williams fellow inmates at FCI Danbury, recognizing that the conditions in the facility heighten the risk to those within its walls, particularly those, like Ms. Williams-Bethea, with preexisting conditions. *See United States v. Almontes*, 05-CR-58 (SRU), 2020 WL 1812713 (D. Conn. Apr. 9, 2020); *United States v. Sawicz*, 08-CR-287 (ARR), 2020 WL 1815851 (E.D.N.Y. Apr. 10, 2020); *United States v. Salvagno*, 02-CR-51 (LEK) (N.D.N.Y Apr. 23, 2020), ECF No. 1166; *United States v.*

---

[17] Keri Blakinger and Beth Schwarzapfel, *How Can Prisons Contain Coronavirus When Purell is Contraband?*, ABA Journal (Mar. 13, 2020), *at* https://www.abajournal.com/news/article/when-purell-is-contraband-how-can-prisons-contain-coronavirus.

[18] Michael Kaste, *Prisons and Jails Worry About Becoming Coronavirus 'Incubators,'* NPR (Mar. 13, 2020), *at* https://www.npr.org/2020/03/13/815002735/prisons-and-jails-worry-about-becoming-coronavirus-incubators.

13

*Park*, 16-CR-473 (RA), 2020 WL 1970603 (S.D.N.Y. Apr. 24, 2020); *United States v. Coston*, 16-CR-127 (SRU) (D. Conn. Apr. 16, 2020), ECF. No. 98; *United States v. Delgado*, 18-CR-17 (VAB) (D. Conn. Apr. 30, 2020), ECF. No. 76; *United States v. Mel*, 18-CR-571, 2020 WL 2041674 (D. Md. Apr. 28, 2020); *United States v. Foreman*, 19-CR-62 (VAB), 2020 WL 2315908 (D. Conn. May 11, 2020); *United States v. Valencia*, 15-CR-163 (AT), 2020 WL 2319323 (S.D.N.Y. May 11, 2020); *United States v. Field*, 18-CR-426 (JPO) (S.D.N.Y. May 6, 2020), ECF No. 39.

    C.    *The Section 3553(a) Factors Counsel In Favor of Release*

Because Ms. Williams-Bethea has established extraordinary and compelling circumstances warranting her release, this Court is obligated to balance those circumstances against the Section 3553(a) factors to the extent they are applicable. 18 U.S.C. § 3582(c)(1)(A).

Ms. Williams-Bethea's offense was extraordinarily serious and egregious, but she currently does not present a risk to the community. Her offense of conviction was a non-violent fraud and is her only contact with the criminal justice system. She has a Master's degree and a documented work history. She is supported in the community by a network of family and friends, including her husband of nearly twenty years. If she is released, she has a stable residence. Ms. Williams-Bethea has repeatedly expressed sincere remorse for her offense and poses a very low likelihood of recidivism. In prison, she has been an exemplary inmate. She has sustained no disciplinary infractions. She has maintained a work detail in food services. She participated in Danbury's Adult Continuing Education program, is an

active member of the choir, attends religious services and bible study, and has taken several recreational classes, including courses in crochet, positive-thinking, and yoga.

Ms. Williams-Bethea always has acknowledged that a substantial degree of punishment is warranted in light of her offense. Her instant application does not change that. But, she already has served a significant portion of her incarceratory sentence under very punitive and difficult conditions. This term of imprisonment, coupled with her continuing home incarceration, is sufficient for purposes of punishment and general deterrence.

In short, considering all of the statutory factors, the Court should grant Ms. Williams-Bethea compassionate release.

## CONCLUSION

For the reasons described above, the Court should immediately grant Ms. William-Bethea's motion to reduce her sentence, and resentence her to time served, with three years of supervised release, with a special condition of home confinement until May 14, 2022.

To the extent that the Court requests any further information or briefing regarding this motion, counsel respectfully requests that such proceedings be in writing or via videoconference or telephone conference.

Dated:    New York, New York
          May 22, 2020

                                        Respectfully submitted,

                                        Federal Defenders of New York

                                        By:   /s/ Julia Gatto
                                              Julia Gatto, Esq.
                                              Assistant Federal Defender