USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___6/2/20___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States

—v—

Melanie Williams-Bethea,

                Defendant.

18-cr-78 (AJN)

<u>OPINION & ORDER</u>

ALISON J. NATHAN, District Judge:

      Melanie Williams-Bethea is currently incarcerated at FCI Danbury in Connecticut, which is the site of a significant COVID-19 outbreak. Ms. Williams-Bethea suffers from a number of serious medical issues that put her at high risk of severe medical consequences were she to contract the virus. As a result, she filed an administrative request with the Bureau of Prisons seeking release, but the BOP denied her request. She subsequently filed an emergency motion for compassionate release, pursuant to 18 U.S.C. § 3582(c), with this Court. For the reasons that follow, Ms. Williams-Bethea's motion for compassionate is GRANTED, and the Government is ordered to release Ms. Williams-Bethea from custody immediately.

## I.    BACKGROUND

### A.  Underlying Criminal Charges

      In January 2018, the Government charged Ms. Williams-Bethea in a multi-defendant indictment. *See* Dkt. No. 19. She was charged with bribery, fraud in connection with federal student aid, conspiracy to commit bribery and to commit fraud in connection with federal student aid, and conspiracy to commit wire fraud. *Id.* The Government alleged, and Ms. Williams-Bethea later admitted, that she was the ringleader in a years-long scheme to defraud Columbia University's Teacher College, where she was employed as Director of Financial Aid, of more

1

than two-million dollars.  Ms. Williams-Bethea awarded unearned and unjustified student-aid stipends to student co-conspirators, and those students then kicked back portions of the stipends to her, generally paying back about half the money they received.  *See* Sentencing Transcript, Dkt. No. 155, at 27–29.  She personally obtained "hundreds of thousands of dollars, certainly at least $350,000" from this scheme.  Sentencing Tr. at 29.

Following her indictment, the Magistrate Judge determined that incarcerating Ms. Williams-Bethea was not necessary to secure the safety of the community, so she was released on bail pending trial.  *See* Dkt. No. 5.  In November 2018, Ms. Williams-Bethea pleaded guilty to conspiracy to commit bribery and admitted responsibility for this scheme.  *See* Dkt. Nos. 74, 77.  The Court then sentenced the Defendant to 40 months' imprisonment to be followed by three years of supervised release.  *See* Sentencing Tr. at 32; Dkt. No. 129 (Judgment).

### B.    Ms. Williams-Bethea's Motion for Compassionate Release

Ms. Williams-Bethea is currently serving her sentence at FCI Danbury in Connecticut. Her scheduled release date from custody is May 14, 2022, and the BOP has authority to transfer her to home confinement as early as November 2021.  *See* Williams-Bethea Reply Br., Dkt. No. 172, at 8.  On May 7, 2020, the Defendant requested that the warden of FCI Danbury release her from custody, but the warden subsequently denied her request.  *See* Dkt No. 169, Ex. C.  On May 22, 2020, she filed an emergency motion for compassionate release.  Dkt. No. 169.  Ms. Williams-Bethea seeks compassionate release because her age and underlying health conditions make her especially vulnerable to COVID-19.  The Government opposes the Defendant's motion, which is now fully briefed.  *See* Gov't Opposition, Dkt. No. 171.

## II.    THE DEFENDANT IS ENTITLED TO COMPASSIONATE RELEASE

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment

once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow

exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011).  The compassionate-release

statute creates one such exception: It allows a court to "reduce" a term of imprisonment, after

considering the factors set forth in 18 U.S.C. § 3553(a), if "it finds that . . . extraordinary and

compelling reasons warrant such a reduction . . . and that such a reduction is consistent with

applicable policy statements issued by the Sentencing Commission."  18 U.S.C.

§ 3582(c)(1)(A)(i).  Under the recently enacted First Step Act, defendants serving their sentence

may move the Court for compassionate release.  *United States v. Gotti*, No. 02-cr-743 (CM),

2020 WL 497987 (S.D.N.Y. Jan. 15, 2020), at *2; *United States v. Gross*, No. 15-cr-769 (AJN),

2020 WL 1673244, at *2 (S.D.N.Y. Apr. 6, 2020).  Ms. Williams-Bethea has filed such a

motion.

### A.  Even if Ms. Williams-Bethea Has Not Exhausted, the Court Excuses Compliance With This Requirement

Before a compassionate-release motion can be considered on the merits, the defendant

must exhaust administrative remedies.  The First Step Act provides that courts can consider

compassionate-release motions brought by incarcerated defendants only if one of two

requirements is met.  First, courts can consider such motions "after the defendant has fully

exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion

on the defendant's behalf."  18 U.S.C. § 3582(c)(1)(A).  Second, courts can consider such

motions after "the lapse of 30 days from the receipt of such a request by the warden of the

defendant's facility."  *Id.*  The earlier of these two dates controls; as soon as one of these

requirements is met, the exhaustion requirement is satisfied.  *Id.*

As discussed, Ms. Williams-Bethea requested that the warden of her prison, FCI

Danbury, release her immediately due to "the ongoing coronavirus pandemic and Ms. Williams-

Bethea's vulnerabilities were she to contract the virus."  Dkt. No. 169, Ex. C.  Ms. Williams-Bethea represents, and the Government does not dispute, that FCI Danbury's warden denied her request a few days later (the parties have not provided that denial to the Court).  *See* Williams-Bethea Br. at 9; Gov't Br. at 3.  The Defendant contends that this is sufficient to satisfy the First Step Act's exhaustion requirement.  But the Government disagrees, and contends that she has not satisfied the requirement because she "must exhaust 'all administrative rights to *appeal* such a denial,' which she does not claim to have done."  Gov't Br. at 3 (quoting 18 U.S.C. § 3582(c)(1)(A)).  For her part, Ms. Williams-Bethea responds that "[t]he government provides no guidance as to whom or through what process Ms. Williams-Bethea could appeal the denial or why that process, if it exists, would not have been futile."  Williams-Bethea Reply Br. at 3.

The Court need not decide whether the Defendant has satisfied the statutory exhaustion requirement, because even if she has not, the Court excuses that failure to exhaust.  As the Court discussed at length in its recent decision in *United States v. Scparta*, the First Step Act's exhaustion requirement is not jurisdictional, but instead a claims-processing rule.  A defendant's lack of compliance therefore does not strip the Court of power to grant compassionate release. No. 18-cr-578 (AJN), 2020 WL 1910481, at *4 (S.D.N.Y. Apr. 20, 2020); *accord United States v. Pena*, No. 15-CR-551 (AJN), 2020 WL 2301199 (S.D.N.Y. May 8, 2020).  The Second Circuit has also held that such requirements generally admit of equitable exceptions, such as waiver, estoppel, and futility.  *Scparta*, 2020 WL 191048, at *5; *see Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 443 (2d Cir. 2006).  To determine whether a claims-processing rule is subject to such exceptions, courts look to statutory text and history.  *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992); *see, e.g.*, *United States v. Russo*, No. 16-cr-141 (LJL), 2020 WL 1862294, at *6 (S.D.N.Y. Apr. 14, 2020).

The First Step Act's plain text creates "an exhaustion requirement like no other of which the Court is aware," in that it contains elements of both a traditional exhaustion scheme and a timeliness requirement. *Scparta*, 2020 WL 1910481, at *6; *see also Russo*, 2020 WL 1862294, at *6. The Supreme Court and Second Circuit have often applied equitable exceptions to otherwise unforgiving time requirements, strongly supporting the conclusion that they apply here too. *See, e.g.*, *Holland v. Florida*, 560 U.S. 631, 649 (2010) (applying equitable exception even though text did not permit such an exception); *Paese*, 449 F.3d at 443. Moreover, the Court also considers the exhaustion provision's statutory title, "Increasing the Use and Transparency of Compassionate Release." Pub. L. No. 115-391, 132 Stat. 5339 (2018). Without the application of equitable exceptions, prisoners bringing compassionate-release motions due to COVID-19 might *never* obtain timely judicial review before the virus takes its toll. Such an interpretation, therefore, would serve neither of the provision's stated aims. Finally, the statute's legislative history, which the Supreme Court has described as "paramount" to this inquiry, makes clear that "Congress specifically designed the First Step Act to result in expeditious review of prisoner applications and to improve the health and safety of inmates, prison staff, and the community." *Scparta*, 2020 WL 1910481, at *7 (citing *McCarthy*, 503 U.S. at 144, and H.R. Rep. 115-699 at 22). Leaving Ms. Williams-Bethea in administrative limbo while her life is at risk would be contrary to Congress's express purpose.

In sum, the First Step Act's text, history, and structure all support the Court's conclusion that the statute's exhaustion requirement is amenable to equitable exceptions. And here, waiting for Ms. Williams-Bethea to exhaust her remedies would both be futile and cause her irreparable harm. FCI Danbury, the complex at which the Defendant is currently held, is a heavily populated BOP facility and currently has more than 140 confirmed cases of COVID-19. *See*

Williams-Bethea Br., Dkt. No. 169, at 2–4 (summarizing publicly available data regarding FCI Danbury).  For the Defendant to remain in custody while she proceeds through an agency appeals process, which could take weeks, if not months, could be the difference between life and death—and if she falls seriously ill or dies, she will have suffered irreparable harm and her motion seeking release would be futile.  *Accord Perez*, 2020 WL 1546422, at *3 ("Here, even a few weeks' delay carries the risk of catastrophic health consequences for Perez.  The Court concludes that requiring him to exhaust administrative remedies, given his unique circumstances and the exigency of a rapidly advancing pandemic, would result in undue prejudice and render exhaustion of the full BOP administrative process both futile and inadequate.").  For these reasons, the Court excuses any failure by Ms. Williams-Bethea to exhaust administrative remedies.

### B.  The Defendant Has Satisfied All Substantive Requirements For Compassionate Release

Given that administrative exhaustion does not bar the Defendant's request, the Court now considers the merits of her motion.  To award Ms. Williams-Bethea the relief she seeks, the Court must find that "extraordinary and compelling reasons warrant" compassionate release.  18 U.S.C. § 3582(c)(1)(A)(i).  The Court must also consider the factors set forth in 18 U.S.C. § 3553(a).  *Id.* § 3582(c)(1)(A).  And the Court must find that release is consistent with the Sentencing Commission's policy statements.  *Id.* § 3582(c)(1)(A)(i).

The Court begins with the factors set out in 18 U.S.C. § 3553(a).  Because this Court sentenced Ms. Williams-Bethea, the Court is intimately familiar with how these factors apply to her circumstances.  To begin, as the Court noted at sentencing, the Defendant's crime was serious.  She abused her position of trust as Director of Financial Aid, embezzling more than two million dollars over years.  Sentencing Tr. at 27–29.  Her "role in this serious conspiracy was its

central cog, its ring leader . . . Without her, none of this likely happens." *Id.* at 29.  However, Ms. Williams-Bethea pleaded guilty, accepted responsibility for her conduct before the Court, and expressed genuine remorse for her involvement in this scheme.  *See id.* at 25–27; *see also id.* at 31 (The Court: "I credit [the Defendant's] statement in court today as one of full acceptance of responsibility and genuine remorse.").  Moreover, this was the Defendant's first and only criminal offense.  *See* Presentence Report ¶¶ 95–97.  As the Court noted at sentencing, there is "nothing in the record to indicate she is likely to reoffend." *Id.* at 31.  Crucially, although the Defendant's offense harmed the College and its students, it was entirely nonviolent in nature.

The Court's substantial 40-month sentence reflected the seriousness of the Defendant's offense and these mitigating factors, and was at the time sufficient, but no greater than, necessary to achieve the purposes of sentencing.  But the Court's analysis is different in current circumstances.  Due to the COVID-19 pandemic, the "history and characteristics of the defendant" and the "need . . . to provide the defendant with needed . . . medical care," § 3553(a), now weigh heavily in favor of the Defendant's release, given the health risk that continued incarceration poses to her.  The Defendant is fifty-years old.  She has several underlying health conditions that increase her vulnerability to COVID-19 infection and, if infected, to the risk of serious injury or death.  Specifically, Ms. Williams-Bethea suffers from hypertension and is "morbidly obese." *See* Williams-Bethea Br. at 5–6; Dkt. No. 169, Ex. B (Defendant's medical records).  The Centers for Disease Control and Prevention has identified hypertension as a comorbidity that increases the likelihood of serious risk from COVID-19. *See* Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease, Centers for Disease Control and Prevention, available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html.  This Court has repeatedly recognized that COVID-19

presents a heightened risk for individuals with hypertension, like the Defendant.  *See, e.g.*, *Scparta*, 2020 WL 1910481, at *9; *see also Basank v. Decker*, No. 20-cv-2518 (AT), 2020 WL 1481503, at *3 (S.D.N.Y. Mar. 26, 2020) (noting that hypertension increases risk of harm from COVID-19, taking "judicial notice that, for people of advanced age, with underlying health problems, or both, COVID-19 causes severe medical conditions and has increased lethality," and citing information from the CDC).  In addition, the Defendant puts forward compelling and undisputed evidence that obesity is likewise a comorbidity for COVID-19, and that individuals who are severely obese, especially those in the Defendant's age group, are significantly more likely to face serious risk from the virus.  Williams-Bethea Br. at 5–7 (citing numerous medical studies); *see also United States v. Zukerman*, 16-cr-194 (AT), 2020 WL 1659880 (S.D.N.Y. Apr. 3, 2020) (noting risks of hypertension and obesity in this context).

In short, the time Ms. Williams-Bethea has served in prison has already achieved some of the original sentence's retributive, deterrent, and incapacitate purpose.  Indeed, she will be eligible for release in one-and-a-half years.  And the Defendant's continued detention now poses her imminent danger of serious injury and death—a circumstance that the Court never considered when imposing its sentence, and certainly a risk in gross disproportion to the underlying conduct here.  Having reconsidered the § 3553(a) factors, the Court thus concludes that they entitle the Defendant to compassionate release.

The Court next considers whether "extraordinary and compelling reasons warrant such a reduction [in sentence] . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  "Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence."  *United States v. Butler*, No. 19-

cr-834 (PAE), 2020 WL 1689778, at *1 (S.D.N.Y. Apr. 7, 2020).  The applicable policy

statement, U.S.S.G. § 1B1.13, outlines four circumstances that constitute "extraordinary and

compelling reasons" and thus warrant a sentence reduction.[1]  One of these circumstance exists

where the defendant is "suffering from a serious physical or medical condition . . . that

substantially diminishes the ability of the defendant to provide self-care within the environment

of a correctional facility and from which he or she is not expected to recover."  U.S.S.G.

§ 1B1.13(1)(A) & cmt. n.1(A).  The policy statement also requires that the defendant not pose "a

danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2).

    As this Court has explained, the COVID-19 pandemic presents an extraordinary and

unprecedented threat to incarcerated individuals.  *See, e.g.*, *United States v. Stephens*, No. 15-cr-

95 (AJN), 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020); *Gross*, 2020 WL 1673244, at *3

("we are not currently living under normal circumstances"); *accord United States v. Nkanga*, No.

18-cr-713 (JMF), 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020) ("The country faces

unprecedented challenges from the novel Coronavirus pandemic. Those detained in jails and

prisons face particularly grave danger.").  In these exigent circumstances, keeping Ms. Williams-

Bethea incarcerated poses intolerable risk—"each day, perhaps each hour, that elapses 'threatens

incarcerated defendants with greater peril.'"  *Gross*, 2020 WL 1673244, at *3 (quoting *United

States v. Russo*, No. 16-cr-441 (LJL), Dkt. No. 54, at 5 (S.D.N.Y. Apr. 3, 2020)).  Moreover,

there is no evidence that Ms. Williams-Bethea poses a danger to the community, and the

---

[1] U.S.S.G. § 1B1.13(1)(A) references only "a motion of the Director of the Bureau of Prisons" because it has not yet been updated to reflect the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, which allows defendants independently to seek compassionate release relief from federal courts.  *United States v. Ebbers*, No. 02-cr-1144 (VEC), 2020 WL 91399 (S.D.N.Y. Jan. 8, 2020), at **1, 4.  The majority of courts have concluded that since passage of the First Step Act, courts may make their own assessment of whether "extraordinary and compelling" reasons warrant a sentence reduction.  *See, e.g., United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at *7 (S.D.N.Y. Apr. 6, 2020) (citing cases).

Government does not advance such an argument.  To the contrary, the Defendant's crime was nonviolent, she was released on bail and complied with the terms of her pretrial release, and, as far as the Court is aware, has not had any disciplinary violations while in BOP custody.

The Government raises several arguments in opposition, but none succeeds.  First, the Government proffers that the Bureau of Prisons has taken significant action to reduce the risk COVID-19 poses to prisoners.  Gov't Br. at 4–7.  The Government highlights the BOP's multi-step Pandemic Influenza Plan, efforts to increase hygiene and reduce community spread, and recent grants of home confinement.  *Id.*  The Court lauds these efforts and stresses the continued urgency for the agency to take all feasible measures to reduce the risk posed by COVID-19 to federal inmates.  But even with these new policies, Ms. Williams-Bethea continues to face extraordinary danger from COVID-19 so long as she remains in custody.  As discussed, the Defendant suffers from multiple medical issues that make her especially vulnerable to the virus.

Second, the Government points out that the particular low-security facility at which the Defendant is currently housed "has had *zero* positive cases as of May 26, 2020."  Gov't Br. at 6–7 (emphasis in original).  The Government thus contends that "there is no indication that Williams-Bethea is particularly at risk based on her current location."  *Id.*  But this fact changes nothing about the inherent risks posed by carceral settings to vulnerable inmates.  Even though there may currently be zero confirmed cases, if the virus does enter the facility, then the "inability to individuals to socially distance, shared communal spaces, and limited access to hygiene products" make community spread all but unavoidable.  *Scparta*, 2020 WL 1910481, at *7; *see also Coronel v. Decker*, No. 20-cv-2472 (AJN), 2020 WL 1487274, at *3 (S.D.N.Y. Mar. 27, 2020).  In addition, even though inmates may not move between FCI Danbury's various facilities, prison staff and guards do, and they may bring the virus with them.  And testing

remains limited at FCI Danbury, so the Court cannot conclude that the lack of confirmed positive

cases means that no inmates at the Defendant's facility carry the virus.  For these reasons and

others, courts in this district have granted compassionate release to federal inmates due to

COVID-19 even where the particular facility at which they were housed had none or few

confirmed cases of the virus.  *See, e.g.*, *United States v. Fazio*, No. 11-cr-873 (ER), Dkt. No. 329

(S.D.N.Y. May 15, 2020); *United States v. Park*, 16-cr-473 (RA), 2020 WL 1970603 (S.D.N.Y.

Apr. 24, 2020) (granting compassionate release to inmate housed at FCI Danbury's minimum-

security camp, even though the camp had no positive cases).

  Third, the Government argues that because Ms. Williams-Bethea's home is in Queens,

New York—an area devastated by COVID-19—"her release would [not] in fact decrease her risk

of contracting" the virus.  Gov't Br. at 7.  This argument strains credulity.  As the Court has

repeatedly discussed, no matter the measures taken by the BOP, carceral settings inhere with

qualities that make viral transmission of communicable diseases like COVID-19 likely.  *See also*

Williams-Bethea Reply Br. at 6 (discussing how the Defendant currently shares common spaces,

including showers and bathrooms, with dozens of other individuals).  Yet in her Queens home,

Ms. Williams-Bethea will be able to quarantine, limit interaction with individuals outside her

family, and take all other precautions recommended by the Centers for Disease Control.  The

Government cannot plausibly compare the risks posed by the virus to Ms. Williams-Bethea while

she is incarcerated to those while she is in her home, and the Court rejects this argument.

  Despite the Government's contrary arguments, Ms. Williams-Bethea's circumstances are

extraordinary and compelling, and are therefore sufficient to warrant compassionate release.

*Accord United States v. Sawics*, No. 08-cr-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr.

10, 2020) (concluding that, because the defendant suffered from hypertension, he was vulnerable

to COVID-19 and thus "the risk of serious illness or death that he faces in prison constitutes an extraordinary and compelling reason militating in favor of his release."). In sum, the Court concludes that Ms. Williams-Bethea has satisfied all requirements for compassionate release.

## III.    CONCLUSION

For the reasons stated above, the Court GRANTS Ms. Williams-Bethea's motion for compassionate release. The Court therefore RESENTENCES Ms. Williams-Bethea to time served plus 36 months of supervised release under the conditions in the original judgment. The mandatory conditions, standard conditions, and special conditions of supervised release from the Defendant's original sentence are hereby imposed. The Court also imposes an additional condition of supervised release: Ms. Williams-Bethea is ordered to serve twelve months of the remaining portion of her original term of imprisonment under home detention.

The Government is ORDERED to release Ms. Williams-Bethea (BOP Register Number 79902-054) from custody immediately. It is FURTHER ORDERED that the parties shall meet and confer and submit a proposed order governing the conditions of the Defendant's release, including her period of 14 days of self-isolation, no later than June 3, 2020.

SO ORDERED.

Dated:  June 2, 2020
         New York, New York

_____
ALISON J. NATHAN
United States District Judge

12